IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| MICHAEL MATHEWS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 5:20-06057-CV-RK |
| | ) |
| FIELDWORKS, LLC, | ) |
| | ) |
| Defendant. | ) |

## ORDER

On January 26, 2021, the Court voiced concerns to the parties during a status conference as to whether Michael Mathews (Plaintiff) has standing to maintain an action in federal court under the Fair Credit Reporting Act (FCRA). Because a district court does not have subject matter jurisdiction when a plaintiff lacks standing, the Court directed the parties to submit briefing applying the law of Article III standing to the Amended Complaint. (Docs. 32, 33.) Oral argument on the issue was held on February 10, 2021.

The Court finds Plaintiff lacks standing to pursue his disclosure claim under Count II and authorization claim under Count III. Plaintiff has not established or pled he suffered a concrete injury, even assuming there were technical violations in the Defendant's disclosure and authorization form under the Fair Credit Reporting Act ("FCRA"). Accordingly, the Court dismisses Count II and Count III for lack of subject matter jurisdiction. Count I remains for the reasons discussed herein.

**I.  PLAINTIFF'S ALLEGATIONS IN THE AMENDED COMPLAINT**

**Alleged Facts**:

Following are allegations from Plaintiff's Amended Complaint (Doc. 28).

Plaintiff is an individual and resident of Lee's Summit, Missouri. Plaintiff brings this putative class action against Defendant Fieldworks pursuant to the FCRA. Defendant Fieldworks is a foreign company doing business in Missouri and throughout the United States.

Plaintiff replied to an ad on Craigslist for employment with Defendant in November of 2019 and went to Defendant's office for an interview on or about November 7, 2019. The interview was a group interview that took place in Defendant's office. During the interview, Plaintiff informed an employee of Defendant that he had a criminal history, and Defendant's

employee stated that Plaintiff "should be fine." Plaintiff was hired and was provided a start date following the interview. Plaintiff was shown a pop-up screen on an ipad that indicated he was hired, which stated, "proceed to application" and had a button to send a link to himself. Plaintiff accessed the link that was provided and completed Defendant's application form, which stated it was an application, and then clicked a button labeled "submit application."

Plaintiff alleges he did not understand that Defendant's form was anything other than an employment application. Plaintiff alleges Defendant's form did not disclose that Defendant would procure a Consumer Report and did not obtain Plaintiff's authorization to procure a Consumer Report.

Plaintiff attached to the Amended Petition, as Exhibit 1, five pages purporting to be various versions of Defendant's application forms. Page one purports to be a one-page application Defendant used prior to 2019. Page two purports to be the hard-copy form utilized by Plaintiff on November 7, 2019, before Plaintiff accessed the link and electronically completed the digital form. Pages three and four purport to be the digital form completed by Plaintiff electronically. Page three begins at the top:

> Congratulations, you have been offered a position at FieldWorks pending the completion of a background check. Please enter the information below. Make sure to use your full legal name as it appears on government issued documents. Double check your social security number and date of birth for accuracy. If you have issues completing this form, please contact your office director at 202-667-4400[.]

Page four contains a "Signature" box at the bottom of the page, with the following above the box:

> I CERTIFY THAT I AM AT LEAST 18 YEARS OLD AND THAT THE FACTS CONTAINED IN THIS APPLICATION ARE TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE AND UNDERSTAND THAT, IF EMPLOYED, FALSIFIED STATEMENTS ON THIS APPLICATION SHALL BE GROUNDS FOR DISMISSAL. I UNDERSTAND THAT INVESTIGATIVE BACKGROUND INQUIRIES ARE TO BE MADE ON MYSELF INCLUDING CONSUMER INVESTIGATIVE CRIMINAL CONVICTIONS. FURTHER, I UNDERSTAND THAT YOU WILL BE REQUESTING INFORMATION FROM VARIOUS FEDERAL, STATE, AND OTHER AGENCIES, WHICH MAINTAIN RECORDS CONCERNING MY PAST ACTIVITIES RELATING TO ANY CRIMINAL EXPERIENCE. (DATE OF BIRTH IS REQUESTED ONLY TO CONDUCT A BACKGROUND CHECK AND WILL NOT BE USED AS CRITERIA IN THE HIRING PROCESS.)

On or about November 14, 2019, Plaintiff was told in a phone call that he would not be hired by Defendant due to information in his Consumer Report. Plaintiff received a text message the same day as the phone call and was notified a second time that the Defendant could not offer him a position due to his background check. The text message notifying the Plaintiff he was being denied employment because of his background check is standard company policy.

Plaintiff did not know that the Defendant had contacted Sterling Infosystems and utilized a third party to access his personal information. Plaintiff received an email approximately four days after the phone call with a copy of the Consumer Report attached. Defendant did not give the Plaintiff a copy of his Consumer Report prior to withdrawing Plaintiff's offer of employment.

**Alleged Violations**:

**Count I - Adverse Action Violations**

The Amended Complaint alleges "Defendant violated the FCRA by failing to provide Plaintiff . . . with a copy of the Consumer Report that was used to take adverse employment action against [Defendant] prior to the adverse action." (¶ 65.) "Defendant did not provide the Plaintiff with a FCRA Summary of Rights prior to the adverse action." (¶ 69.)

**Count II - Disclosure Violation**

The Amended Complaint alleges "Defendant violated the FCRA by failing to disclose that a Consumer Report would be obtained for employment purposes." (¶ 74.)

**Count III – Authorization Violation**

The Amended Complaint alleges "the documents used by the Defendant to obtain a Consumer Report on the Plaintiff . . . does not contain an authorization for the Defendant to obtain a consumer report for employment purposes." (¶ 84.)

**Alleged Injuries**:

**Count I – Adverse Action Violations**

The Amended Complaint alleges the following harm: Defendant's FCRA violations caused Plaintiff insufficient "time to address any information or inaccuracies within the Consumer Report prior to the adverse action." (¶ 66.) "Had Defendant complied with the FCRA, Plaintiff would have been given time to review, dispute, contest, and/or address the information contained in the Consumer Report." (¶ 67.) "The Defendant's failure to provide the Plaintiff a copy of the Consumer Report or the FCRA Summary of Rights denied the Plaintiff a meaningful opportunity to address the information contained with the Consumer Report." (¶ 70.) "Defendant's failure to

3

abide by the FCRA's notice provisions deprived the Plaintiff of required information and his right to address the information being used to deny his employment." (¶ 71.)

### Count II – Disclosure Violation

The Amended Complaint alleges the following harm: "Plaintiff's oral disclosure of his criminal history during the interview and the Defendant's indication that it shouldn't be a problem further supports Plaintiff's belief that no document disclosed that a Consumer Report would be obtained for employment purposes as that would have prohibited the Defendant from telling him his criminal history would be fine if the Defendant was then going to procure a Consumer Report that would foreclose his ability to work for the Defendant." (¶ 37.)[1]

### Count III – Authorization Violation

The Amended Complaint alleges the following harm: "Defendant's violation of the FCRA resulted in an invasion of Plaintiff's privacy as Plaintiff was not informed that a Consumer Report may be obtained for employment purposes." (¶ 85.) "Defendant's violation of the FCRA resulted in an invasion of Plaintiff's privacy as Plaintiff was not informed that a third party would access his personal information." (¶ 86.) "Defendant's violation of the FCRA resulted in an informational injury because the Plaintiff was not informed that a Consumer Report may be obtained for employment purposes." (¶ 87.)

## II. DEFENDANT'S CHALLENGE TO STANDING

Defendant submits several exhibits of evidentiary materials with their briefing, including a deposition transcript of Plaintiff, Defendant's employment application forms at issue, and the background report at issue. Defendant argues in its briefing that "Mathews has suffered no actual, concrete injury from FieldWorks' alleged violations of FCRA. For that reason he lacks Article III standing and, accordingly, the Court lacks subject matter jurisdiction." (Doc. 32, p.6.)

As to each particular Count, the Defendant argues Plaintiff has not shown or alleged a concrete harm for the following reasons:

### Count I – Adverse Action Violation

"Mathews does not allege that his background check was inaccurate. And it was in fact accurate. Thus, even if Mathews had a copy of the report before he was told he would not be hired, it would have made no difference. There was nothing to explain or correct." (Doc. 32, p. 7.) In

---

[1] Although the Plaintiff does not set forth alleged harm under the language of the body of Count 2, the Court incorporates ¶ 37 as setting forth an alleged harm under Count 2.

4

Case 5:20-cv-06057-RK   Document 46   Filed 03/23/21   Page 4 of 14

other words, it would have not "made any difference if he had been provided the report before he was told he could not be hired, since the relevant facts disclosed by the background report are true; Mathews has admitted as much; and he has never alleged otherwise." (Doc. 32, p.1.)

The Defendant further argues "a plaintiff who received the background report after being denied employment lacks standing when that plaintiff was not concretely injured by the loss of opportunity to contest the report because the report was accurate and thus there was nothing to contest." (Doc. 32, p.14.)

**Counts II & III– Disclosure Violation & Authorization Violation**

Plaintiff "does not allege any concrete, specific injury from the alleged failure to use a technically proper disclosure [and authorization] form." (Doc. 32, p.1.)

Plaintiff admitted signing the disclosure and authorization form. Plaintiff admitted he understood the language to mean that FieldWorks would be checking court records relating to Plaintiff. (Doc. 32, at p.6.)

"'[T]he fact the FieldWorks form had additional material, was not a 'standalone' form and did not meet other technical requirements of the FCRA, is insufficient to find Mathews suffered any invasion or [sic] privacy or 'informational injury.'"

**Evidence outside the Amended Complaint**

The Court notes the following admissions by Plaintiff found in the deposition submitted with Defendant's briefing:

1) Plaintiff believed the form "to be a continuation for the application of employment." (Depo p. 24.)
2) Plaintiff interpreted the paragraph on the form that begins "I certify" "to mean that they might check public records, Missouri Case.net, which is public records for the court system." (Depo pp. 24-25.)
3) Plaintiff "would assume" that if they checked Missouri Case.net, assuming they didn't miss anything, they would have found [Plaintiff's] conviction for burglary. (Depo p. 26.)
4) Plaintiff admitted the information contained in the report was accurate by his response, "No, no nothing would be inaccurate, no. It's all correct." (Depo pp. 35-36.)

5

**Unsupported Arguments by Defendant**

The Court notes, however, Defendant makes unsupported arguments regarding Defendant's policy.

1) "FieldWorks' policy is not to hire felons [and] to exclude felons who were convicted of acts of dishonesty or violence, including burglary, from public contact." (Doc. 32, p. 5.)
2) "Based on the information in the report, FieldWorks' policies required that [Plaintiff] be denied employment." (Doc. 32, p.12.)

### III. ARTICLE III STANDING

**General Principals of Article III Standing**

"Subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived. Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 126 S.Ct. 1235, 1244, 546 U.S. 500, 514 (2006) (cleaned up).

Standing is a threshold or jurisdictional issue. *See Cook v. ACS State & Local Sols., Inc.*, 756 F.Supp.2d 1104, 1106 (W.D. Mo. 2010). Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a claim may be dismissed for "lack of subject matter jurisdiction." A district court does not have subject matter jurisdiction when a plaintiff lacks standing. *Nelson v. Maples*, 672 F. App'x 621 (8th Cir. 2017) (citing *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002)). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016). "To establish the 'irreducible constitutional minimum of standing,' [Mathews] must show [he has] '(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged action of [Fieldworks], and (3) is likely to be redressed by a favorable judicial decision.'" *Yeransian v. B. Riley FBR, Inc.*, 984 F.3d 633, 636–37 (8th Cir. 2021) (quoting *Spokeo*, 136 S. Ct. at 1547). "An injury-in-fact exists where the plaintiff has sustained, or is in immediate danger of sustaining, a concrete and particularized harm that is actual or imminent, not conjectural or hypothetical." *Philadelphia Indem. Ins. Co. v. Atl. Specialty Ins. Co.*, No. 6:20-CV-03065-MDH, 2020 WL 4819949, at *1 (W.D. Mo. Aug. 19, 2020) (internal quotation marks omitted). "'Article III standing requires a concrete injury even in the context of a statutory violation,' and a plaintiff cannot 'allege a bare procedural violation, divorced

from any concrete harm, and satisfy the injury-in-fact requirement of Article III.'" *Auer v. Trans Union, LLC*, 902 F.3d 873, 877 (8th Cir. 2018) (quoting *Spokeo*, 136 S. Ct. at 1549).

### Facial Challenge versus Factual Challenge to Standing

"'In order to properly dismiss [a case] for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments.'" *S.J. v. Tidball*, No. 2:20-CV-04036-MDH, 2020 WL 5440510, at *2 (W.D. Mo. Sept. 10, 2020) (quoting *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993)). "The Eighth Circuit has explained that a 'court deciding a motion under Rule 12(b)(1) must distinguish between a "facial attack" and a "factual attack."'" *Philadelphia Indem. Ins. Co.*, 2020 WL 4819949, at *1 (quoting *Osborn v. U.S.*, 918 F.2d 724, n.6 (8th Cir. 1990)). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *S.J. v. Tidball*, 2020 WL 5440510, at *2. In contrast, "[i]n a factual attack the moving party submits evidentiary materials such as affidavits or depositions to attack the jurisdictional allegations of the complaint, and the court may consider that evidence when determining whether it has subject matter jurisdiction." *Philadelphia Indem. Ins. Co. v. Atl. Specialty Ins. Co.*, No. 6:20-CV-03065-MDH, 2020 WL 4819949, at *1 (W.D. Mo. Aug. 19, 2020) (citing *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993)).

### Plaintiff's Application of Rule 12(b)(1) Legal Standard

Plaintiff asserts the legal standard for the Court to determine standing involves the following principals: 1) "The Rule 12(b)(6) standard applies to Plaintiff's [First Amended Complaint] and the Court accepts as true the factual allegations contained in the complaint;"[2] 2)

---

[2] Citing as authority, *Carlsen v. GameStop, Inc*, 833 F.3d 903,908 (8th Cir. 2016). However, in *Carlsen*, the Eighth Circuit affirmed the district court's dismissal not on standing grounds under Rule 12(b)(1) for lack of subject matter jurisdiction, but rather the Eighth Circuit affirmed the district court's dismissal under Rule 12(b)(6) for failure to state a claim. Because the district court ruled that it was "accepting as true all of Plaintiff's allegations and construing all reasonable inferences in Plaintiff's favor," the Eighth Circuit found that the district court treated the standing challenge as a "facial attack" and refrained from considering matters outside the pleadings. The Eighth Circuit held that because the district court utilized the Rule 12(b)(6) standard (of not considering matters outside the pleadings), the Eighth Circuit was obligated to review the appeal under the same approach as the district court. The Eighth was obligated to treat the standing challenge as a "facial attack," and was obligated to refrain from considering matters outside the pleadings. Here, this Court is not in such a position or under such obligations.

7

"An inquiry into standing is not an assessment of the merits of a plaintiff's claim;"[3] and 3) "In assessing a plaintiff's Article III standing, we must 'assume that on the merits the plaintiffs would be successful in their claims.'"[4] (Doc. 33, p. 4.)

Plaintiff contends in his brief "the Court is required to assume that: (1) Plaintiff was confused by the Defendant's form and understood the form was an employment application; (2) Plaintiff believed he did not receive a disclosure that a Consumer Report would be obtained for employment purposes; (3) Plaintiff believed he did not authorize the Defendant to obtain a Consumer Report; (4) Plaintiff was not given a copy of his Consumer Report; and (5) Plaintiff was not provided an opportunity to address, contest or explain the Consumer Report before being denied employment." (Doc. 33, p. 4.)

During oral arguments, Plaintiff stated "in assessing the Plaintiff's Article III standing this Court must assume on the merits that the plaintiff will be successful on their claims and the amended complaint must be granted all reasonable inferences." (Rough Transcript p.3.)

Factual challenges to subject matter jurisdiction were not addressed in Plaintiff's briefing nor were factual challenges to subject matter jurisdiction addressed in Plaintiff's argument. Plaintiff, therefore, did not address the parameters of what the Court can consider when assessing standing when a factual challenge is lodged, or when the Court raises the issue of standing sua sponte.

**Defendant's Application of Rule 12(b)(1) Legal Standard**

Defendant did not address the Court's parameters of a factual challenge to subject matter jurisdiction in Defendant's briefing.

During oral arguments, however, Defendant argued "[a]s a preliminary matter, the issue of what the Court can take into consideration at this stage, the Court can definitely look beyond the pleadings with respect to the issue of standing." "[W]here there's a factual challenge to jurisdiction, there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the extension of its power to hear the case." "[T]he Eighth Circuit said no presumptive truthfulness attaches to plaintiff's allegations when there's a factual dispute . . factual presentation that challenges the issue going to jurisdiction." (Rough Transcript p.16.)

---

[3] Citing as authority, *Am. Farm Bureau Fed'n v. U.S. Envtl. Prot. Agency*, 836 F.3d 963, 968 (8th Cir. 2016).

[4] Citing as authority, *Graham v. Catamaran Health Sols. LLC*, No. 16-1161, 2017 WL 3613328, at *4 (8th Cir. Aug. 23, 2017).

Defendant mounts a factual attack by submitting evidentiary materials, including a deposition transcript of Plaintiff, Defendant's employment application forms, and the background report at issue.[5] Defendant argued and submitted evidence that Plaintiff admitted signing the disclosure and authorization form; Plaintiff admitted he understood the language in the form to mean that FieldWorks would be checking court records relating to Plaintiff; Plaintiff admitted the information in the background report was inaccurate. Arguing, thus, even if Mathews had a copy of the report before he was told he would not be hired, it would have made no difference because Plaintiff had nothing in his background report to explain or correct.

## IV.     FCRA FRAMEWORK

Under the FCRA, "[t]he term 'person' means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity" and "[t]he term 'consumer' means an individual." 15 U.S.C.A. § 1681a(a) and (b). The FCRA provides that a "consumer report" is

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for-- . . . employment purposes[.]

15 U.S.C.A. § 1681a(d)(1). A "consumer reporting agency" is

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C.A. § 1681a(f).

In addition, the FCRA provides that "[a]ny person who willfully fails to comply with any requirement [of the FCRA] with respect to any [individual] is liable to that [individual]" for, among other things, either "actual damages" or statutory damages of $100 to $1,000 per violation, costs of the action and attorney's fees, and possibly punitive damages. 15 U.S.C.A. § 1681n(a).

---

[5] While Defendant does not specifically indicate whether it is lodging a facial or factual attack, or both, the Court construes Defendant's oral arguments, briefing, and evidentiary material submitted with the briefing as a factual challenge to the Court's subject matter jurisdiction.

9

**Count I – Adverse Action Violation**

The FCRA mandates, subject to exceptions not relevant here, that when using a consumer report for employment purposes, a person intending to take an adverse action based in whole or in part on the consumer report shall provide a copy of the report and a description of the consumer's rights under the FCRA to the consumer to whom the report relates prior to taking such adverse action. 15 U.S.C.A. § 1681b(3)(A).

In Count I of the Amended Complaint, Plaintiff alleges that Defendant used a Consumer Report to take adverse employment action against Plaintiff and other class members without providing a copy prior to the adverse action, providing a reasonable time to address any information or inaccuracies in the Consumer Report, or providing an FCRA Summary of Rights. Plaintiff alleges Defendant's violations denied him a meaningful opportunity to address the information contained in the Consumer Report and deprived him of required information and his right to address the information being used to deny his employment. In his deposition, Plaintiff admitted that nothing in the report Defendant obtained from the third party was inaccurate. Defendant argues that because there was no showing that getting the report before the decision not to hire would have made a difference, there was no Article III standing.

In *Spokeo, Inc. v. Robins*, the Supreme Court explained that because "Article III standing requires a concrete injury even in the context of a statutory violation[,]" a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." 136 S. Ct. at 1549. After expressing its recognition that Congress, in enacting the FCRA, "plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk[,]" the *Spokeo* Court nonetheless acknowledged "[a] violation of one of the FCRA's procedural requirements may result in no harm." 136 S. Ct. at 1550. The Court then provided a specific example of just such a situation: "even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate." 136 S. Ct. at 1550.

Here, even though Plaintiff eventually obtained his background report, and even though Plaintiff's background report was accurate, Defendant presents only argument that "FieldWorks' policy is not to hire felons [and] to exclude felons who were convicted of acts of dishonesty or violence, including burglary, from public contact." (Doc. 32, p. 5.) Without evidence of FieldWorks' policy, it is possible that Plaintiff could have addressed his conviction contained in

the background report with Defendant and persuaded Defendant to hire him. In such case, Plaintiff would have suffered a concrete and particularized injury. Accordingly, Plaintiff's Count I should not be dismissed at this juncture.

### Counts II & III– Disclosure Violation & Authorization Violation

The FCRA provides that, subject to exceptions not relevant here,

a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless--

> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C.A. § 1681b(2)(A).

In Count II of his Amended Complaint, Plaintiff alleges Defendant failed to disclose a Consumer Report would be obtained for employment purposes. Plaintiff further alleges the documents Defendant used to obtain such reports are employment applications and fail to inform Plaintiff and other class members Defendant will use a third party to access their personal information. Plaintiff alleges in Count III that Defendant used documents that do not contain an authorization for Defendant to obtain to obtain Consumer Reports on Plaintiff and other class members. Plaintiff alleges this violation of the FCRA resulted in an invasion of Plaintiff's privacy because he was not informed a Consumer Report may be obtained for employment purposes and in an informational injury because he was not informed that a third party would access his personal information.

Defendant argues the only Eighth Circuit case specifically addressing the issue held that the kind of technical procedural violation of the FCRA alleged in this case with respect to the authorization and disclosure form does not, in the absence of any specific tangible injury, confer Article III standing. *Auer v. Trans Union, LLC*, 902 F.3d 873 (8th Cir. 2018).

In *Auer v. Trans Union, LLC*, the plaintiff alleged defendant violated several procedural requirements of the FCRA, including "procur[ing] her consumer report without making a clear and conspicuous disclosure that her "consumer report may be obtained for employment purposes" and failing to obtain her written authorization. 902 F.3d 873, 877 (8th Cir. 2018). Auer had

11

accepted a job offer with the City of Minot, following which she was requested to authorize a background check, for which she admittedly completed and signed a single-page form titled "Authorization to Release Information and Waiver." *Id.* at 875. The form included the following language:

> I hereby authorize representatives of the City of Minot to obtain any information in my files pertaining to my driver's license records, criminal history records, education records; credit records; and personal history records.
>
> I hereby direct you and release you, as the custodian of such records, and any school, college, university or other education institution, credit bureau or related personnel, both individually or collectively, from any and all liability for damages of whatever kind, which may be at any time result to me, my heirs, family or associates because of compliance with this authorization and request to release information, or any attempt to comply with it.
>
> Should there be any questions as to the validity of this release, you may contact me as indicated below.

*Id.* at 875-76. "Auer filled out this authorization form because she understood that 'a completed Authorization was required to initiate a background check,' and that 'a completed background check was a prerequisite to'" her job appointment. *Id.* at 878.

The court found that "because Auer consented to the City's background check, she failed to plead an intangible injury to her privacy that is sufficient to confer Article III standing." *Id.* at 877. The *Auer* court found that "[a]lthough Auer pleaded that she did not authorize or consent (in writing or otherwise) to the procurement and use of her consumer report for any purpose, this conclusory allegation is belied by her well-pleaded allegation that she completed the City's authorization form, so we need not accept the denial as true." *Id.* at 878. The court vacated the dismissal of Auer's claims on the merits and remanded the case with instructions to dismiss for lack of jurisdiction. *Id.* at 880.

Here, the Offer document Plaintiff signed in this case read at the top, in relevant part, "Congratulations, you have been offered a position at FieldWorks *pending the completion of a background check*." (Emphasis added.) The "Certification and Authorization" at the bottom of the Offer, prior to the signature box Plaintiff signed included language reading, in relevant part:

> I UNDERSTAND THAT *INVESTIGATIVE BACKGROUND INQUIRIES* ARE TO BE MADE ON MYSELF INCLUDING *CONSUMER INVESTIGATIVE CRIMINAL CONVICTIONS*. FURTHER, I UNDERSTAND THAT YOU WILL BE REQUESTING INFORMATION FROM *VARIOUS FEDERAL, STATE, AND OTHER AGENCIES, WHICH MAINTAIN RECORDS CONCERNING MY PAST*

12

>
> *ACTIVITIES RELATING TO ANY CRIMINAL EXPERIENCE.* (DATE OF BIRTH IS REQUESTED ONLY TO CONDUCT A BACKGROUND CHECK AND WILL NOT BE USED AS CRITERIA IN THE HIRING PROCESS.)

(emphasis added).

The Court finds that, although Plaintiff pleaded he did not understand that Defendant's form was anything other than an employment application and Defendant's form did not disclose that the Defendant would procure a Consumer Report, his claims of resultant invasion of privacy and informational injuries are insufficiently concrete to confer subject matter jurisdiction. Plaintiff does not plead that, aside from not technically complying with the stand-alone requirement for disclosure, the disclosure was inaccurate or confusing to a reasonable person. Plaintiff does not allege that, had the form he filled out contained a technically proper disclosure, he would not have signed or applied for the job. Even the allegation that the form did not disclose that a Consumer Report would be obtained is belied by the form explicitly stating that Plaintiff would be subject to "the completion of a background check" and/or "investigative background inquiries" and/or "consumer investigative criminal convictions", as well as gathering of "information from various federal, state, and other agencies, which maintain records concerning my past activities relating to any criminal experience." These disclosed inquiries, though not employing the terms "consumer report" or "consumer reporting agency," fit within the FCRA's broad definition of a consumer report as including "any . . . communication of any information by a consumer reporting agency bearing on a consumer's . . . character, general reputation, personal characteristics, or mode of living . . . serving as a factor in establishing the consumer's eligibility for-- . . . employment purposes." 15 U.S.C.A. § 1681a(d)(1).

The same rationale is fatal to Plaintiff's claim as to authorization. Plaintiff alleges Defendant used documents that do not contain an authorization for Defendant to obtain a Consumer Report to obtain Consumer Reports on Plaintiff, but the form, though technically deficient under the FCRA, belies the lack of authorization.

Moreover, in his deposition, Plaintiff recalled the form and testified he thought it was a continuation of the application for employment. He testified he interpreted the "Certification and Authorization" language to mean "that they might check public records, Missouri Case.net, which is public records for the court system." Although he testified that he did not have an understanding that a third party was going to be obtaining his Consumer Report and he could not testify to what

he believed Defendant was going to check or find, Plaintiff admitted that Defendant checking public records was "definitely a possibility of something that would be reasonable." Plaintiff conceded that if Defendant checked Missouri Case.net and didn't miss anything he "would assume" and "would believe" that Defendant would have found his conviction for burglary.

On this record, Plaintiff fails to show concrete injury sufficient to establish subject matter jurisdiction for his claims as to FCRA violations as to disclosure and authorization. Accordingly, Plaintiff's Counts II and III are dismissed.

## V. CONCLUSION

After careful consideration, Plaintiff's Counts II and III are **DISMISSED**, and Plaintiff's Count I **REMAINS.**

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: March 23, 2021