# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

MICHAEL MATHEWS, )
)
        Plaintiff, )
)
v. ) Case No. 5:20-06057-CV-RK
)
FIELDWORKS, LLC, )
)
        Defendant. )

## ORDER

Before the Court is Defendant's motion for reconsideration and modification of the Court's prior order granting Plaintiff's motion for class certification. (Doc. 71.) The motion is fully briefed. (Docs. 72, 75, 76.) For the reasons set forth below, the motion is **DENIED**.

## I. Background

In this case, Plaintiff was an applicant for employment with Defendant employer. Plaintiff alleges Defendant failed to give Plaintiff and those similarly situated to him a copy of their consumer report before it took adverse action against them based on those consumer reports in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(3).

Specifically, Plaintiff claims Defendant used a Consumer Report, as defined by the FCRA, to take adverse employment action against Plaintiff and other members of the putative adverse action class. Plaintiff alleges Defendant violated the FCRA by failing to provide Plaintiff and other adverse action class members with (1) a copy of the Consumer Report that was used to take adverse employment action against them prior to the adverse action and (2) a reasonable time to review, dispute, contest, address, and/or otherwise challenge any information or inaccuracies within the Consumer Reports prior to the adverse action.

In its Order of October 5, 2021, the Court granted Plaintiff's request to certify the following class:

> All employees or prospective employees of Defendant that suffered an adverse employment action on or after February 21, 2018, that was based, in whole or in part, on information contained in a Consumer Report, and who were not provided a copy of the Consumer Report by the Defendant in advance of the adverse action.

(Docs. 70, 59.)

## II. Legal Standard

The Federal Rules of Civil Procedure do not expressly contemplate a "motion to reconsider." *Discount Tobacco Warehouse, Inc. v. Briggs Tobacco & Specialty Co., Inc.*, No. 3:09-CV-05078-DGK, 2010 WL 3522476, at *1 (W.D. Mo. Sept. 2, 2010) (citation omitted). Federal Rule of Civil Procedure 54(b) does, however, provide:

> [a]any order . . . , however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

This Court has recognized that federal courts have "general discretionary authority to review and revise [an] interlocutory ruling[] prior to the entry of final judgment." *Mathews v. FieldWorks, LLC*, No. 5:20-06057-CV-RK, 2021 WL 4555254, at *1 n.1 (W.D. Mo. Oct. 5, 2021) (quoting *Auto Servs. Co. v. KPMG, LLP*, 537 F.3d 853, 857 (8th Cir. 2008)). An order granting a motion for class certification is an interlocutory order. *In re Piper Aircraft Distrib. Sys. Antitrust Litig.*, 551 F.2d 213, 219 (8th Cir. 1977).

Indeed, district courts have "greater discretion to grant a motion to reconsider an interlocutory order than a motion to reconsider brought pursuant to . . . [Federal Rule of Civil Procedure] 60(b)." *Discount*, 2010 WL 3522476, at *2; *see also Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 903 (8th Cir. 2005) ("Relief under Rule 60(b) is an extraordinary remedy and will be justified only under exceptional circumstances.") (citation and quotation marks omitted).

At the same time, considering the court's "interest in judicial economy and ensuring respect for the finality of decisions, values which would be undermined if it were to routinely reconsider its interlocutory orders," courts in this district reconsider interlocutory orders "if the moving party demonstrates (1) that it did not have a fair opportunity to argue the matter previously, and (2) that granting the motion is necessary to correct a significant error." *Int'l Ins. Co. of Hannover Ltd. v. IEA Renewable Energy, Inc.*, No. 17-06143-CV-SJ-GAF, 2021 WL 6144749, at *2 (W.D. Mo. June 1, 2021) (citation and quotation marks omitted); *see Jacob Rieger & Co., LLC v. Cincinnati Ins. Co.*, No. 20-cv-00681-SRB, 2020 WL 9421046, at *1 (W.D. Mo. Dec. 7, 2020) (applying this standard); *Jordan v. U.S. Dep't of Labor*, No. 18-06129-CV-SJ-ODS, 2019 WL 1118560, at *3-4 (W.D. Mo. Mar. 11, 2019) (same); *Commerce Bank v. U.S. Bank Nat'l Ass'n*, No. 4:13-CV-00517-

BCW, 2015 WL 12806575, at *1 (W.D. Mo. Nov. 2, 2015) (same); *Halloran v. Houlihan's Rests., Inc.*, No. 4:11-cv-01026-DGK, 2013 WL 544011, at *2 (W.D. Mo. Feb. 12, 2013) (citing *Conrad v. Davis*, 120 F.3d 92, 95 (8th Cir. 1997)) (other citation omitted).

### III. Discussion

Defendant first argues the Court erred in failing to clarify whether it was distinguishing between two applicant groups: (1) a group of approximately 500 applicants who were told they would not be hired before receiving a copy of their consumer report and (2) another group of approximately 2,100 applicants, some of whom were told they would not be hired after receiving a copy of their report and some before. (Doc. 71.) Defendant next argues the court erred in granting class certification to include the group of 2,100 due to the individualized inquiry it contends would be required as to the sequencing of receipt of notification of not being hired and receipt of a copy of their consumer report. (Doc. 71.)

Defendant asserts its policy was adequate under the FCRA as to any applicant who received their report any time before being rejected, thus requiring an individualized inquiry as to the sequence of events. In support of its position that its policy was adequate under the FCRA as to the applicants who may have received their report some period of time before being rejected, Defendant cites *Johnson v. ADP Screening & Selection Services, Inc.*, for the statement, "even if [the employer] made an automated internal decision, it is not an adverse action for purposes of the FCRA." 768 F. Supp. 2d 979, 982-83 (D. Minn. 2011).

Plaintiff asserts in response that the testimony of Defendant's owner and corporate representative reflects that it was Defendant's policy during the relevant time for a central staff administrative team member to change an applicant's status in the database to "not approved" *before* providing the applicant with a copy of their consumer report if the member found a reason for rejection from information contained in the applicant's consumer report. (Doc. 75.) Plaintiff concludes this policy affected *every* member of the proposed Adverse Action class (both applicant groups) and violated the FCRA. (*Id.*)

The Court has previously held, in ruling on Defendant's motion for summary judgment:

[T]aken as a whole, the current record leaves room for disagreement among reasonable factfinders as to the following: (1) whether Defendant has a policy, (2) whether Defendant consistently enforces such policy, (3) whether such policy would operate to exclude Plaintiff from employment with Defendant, (4) whether Plaintiff would be excluded from employment pursuant to the policy regardless of a meaningful opportunity to respond to a Consumer Report provided to Plaintiff far

3

enough in advance that Plaintiff could address it with a representative of Defendant prior to a decision being made.

(Doc. 58 at 6.) The Court also noted in ruling on Plaintiff's motion for class certification:

> Plaintiff's reply argues that even those outside the 500 were victims of an adverse action in violation of the FCRA because even they were treated in accordance with Defendant's stated policy, under which, if Defendant staff finds:
>
>> a reason for rejection, they log in to the Sterling website and initiate an adverse action process, and then after they've done that, they will then change their status in our database to "not approved," which will generate an email and a text from our system and also cancels them from the schedule.
>
> Plaintiff asserts because the FCRA adverse action was created to allow an applicant to have a meaningful review of the Consumer Report and then an opportunity to contest or explain the information contained within the Consumer Report, the email followed immediately by the text notice of the adverse action defeats the protections provided by the FCRA. Plaintiff's argument is that applicants are not provided any time for a meaningful review (if there is any review at all) before the text notification is received, so members within the 2,600 group, but outside the 500, have also experienced an adverse action due to Defendant's policy. . . .

(Doc. 59 at 4.) The Court then concluded it found Plaintiff's reasoning and authority persuasive. (*See id.*)

Similarly, here the Court finds Defendant's policy during the relevant time to change an applicant's approval status based on information in their credit report before the applicant received a copy of their credit report affected every member of the proposed Adverse Action class (including both applicant groups). Moreover, the *Johnson* case, read more fully, does not support Defendant's position in its motion. It explains, rather:

> The FCRA requires "the person intending to take such adverse action" to notify the consumer that he has a right to dispute the contents of his file. Thus, the FCRA places an employer in a position where it cannot hire and cannot reject an applicant: it must give notice that it intends to reject him. In other words, it cannot act and must place the application "on hold."

768 F. Supp. 2d at 983. Here though, unlike in *Johnson*, under Defendant's undisputed policy the applicants at issue were not in any way "on hold." In this case, it appears any time that passed between (1) the internal initiation of an adverse action process and change of the applicant's status in the database and (2) the transmission and receipt by the applicant of the email and text notifying

4

the applicant their application was rejected in this case was not a period during which Defendant, knowing it cannot hire and cannot reject the applicant, placed the application "on hold" with any opportunity for the applicant to dispute the contents of their consumer report. Instead, the internal initiation of the adverse action process and change of the applicant's status in the database resulted in the transmission of an email and text notifying the applicant their application was rejected.

Because all members of the proposed Adverse Action class (including both applicant groups) were affected by Defendant's undisputed policy, which did not allow for a meaningful "on hold" period for applicants to allow them a right to dispute the contents of their reports after being notified Defendant intended to take adverse action against them, Defendant's arguments fail.

Accordingly, Defendant's motion for reconsideration and modification (Doc. 71) is **DENIED**.

**IT IS SO ORDERED**.

/s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: March 11, 2022